## STATE v. MARTIN OLSON.[1]

April 15, 1932.

No. 28,817.

*Arthur E. Arntson,* for appellant.

*Henry N. Benson,* Attorney General, *James E. Markham,* Deputy Attorney General, and *Theodore N. Ofstedahl,* County Attorney, for the state.

[1]Reported in 242 N. W. 348.

46

DIBELL, J.

The defendant was convicted of perjury and appeals from the order denying his motion for a new trial.

In January, 1931, the plaintiff's son, Bennett Olson, was convicted in Goodhue county upon an information of the county attorney charging him with grand larceny in the second degree. The defendant was a witness at the trial. He testified that he and his son were at an oil filling station in Pine River in Goodhue county late in the afternoon of December 24, 1930, and that one Berton Ingalls, who also testified, was with them. The presence of Ingalls was the important question in the perjury indictment.

In the prosecution of Bennett Olson the state's claim was that he stole a revolver from a drawer of a desk in the filling station. Bennett Olson testified that the desk inside the station was open and he saw the gun, and that he said to Holmes, "I would like to borrow it." Holmes said, "I ain't got no right to let it go." " 'Well,' I said, 'I will bring it back tonight.' 'All right, then,' he said, 'you can take it.' " The materiality of the defendant's testimony that Ingalls was in the car arises because of the testimony of Ingalls that Holmes came out of the station with the water can just before they started, and Bennett Olson said to him, "I will be back tonight," and Holmes said, "You be sure and stop when you come back." He repeated that Holmes said, in effect, to be sure to come back in the evening, and Bennett said he would stop when he came back. This testimony had a bearing in corroboration of Bennett Olson's claim that he had borrowed and not stolen the gun. The presence of Ingalls was material in corroboration of Bennett Olson that he took the gun with the consent of Holmes, and the defendant's testimony as to the presence of Ingalls was material. If Ingalls was there, his testimony was for consideration of the jury. If not there, the defendant and his son and Ingalls were not speaking truly, and Ingalls' corroborating testimony was without force. It may be noted, while not particularly important here, that the defendant gave testimony for his son tending to show that there was no theft but a borrowing of the gun. The evidence sustains the finding of the jury that defendant was guilty of perjury.

■ To convict the defendant it was necessary to prove that he was duly sworn in the trial of his son and that he wilfully and knowingly testified falsely relative to a material matter. G. S. 1923 (2 Mason, 1927) § 10016. The trial which resulted in Bennett Olson's conviction was upon information of the county attorney, as is permitted by the constitution after preliminary hearing and binding over to the grand jury by a justice of the peace. G. S. 1923 (2 Mason, 1927) § 10664, et seq. The state offered in evidence and there were received the proceedings before the justice of the peace, including the complaint upon which Bennett Olson was arrested, the order of commitment, the information of the county attorney, the list of the jurors who tried the case, and the verdict. Proper objections were taken to their introduction.

It was not necessary to introduce the proceedings before the justice of the peace, though there could be no information by the county attorney unless the defendant was bound over to the grand jury. The information by the county attorney was presumably in the regular course of procedure, and itself was a sufficient foundation. Whether there was a conviction or an acquittal or a mistrial was immaterial. The question was whether Martin Olson wilfully gave false and material testimony—not whether Bennett Olson was acquitted or convicted. The proof that Bennett Olson was found guilty might suggest that the jurors who tried him did not accept the testimony of the defendant that Ingalls was at the filling station. Nor was it necessary to show who the particular jurors called or those who rendered the verdict were. The showing gave the jury the names of 12 of their fellow citizens of the county who found Bennett Olson guilty and perhaps disbelieved the defendant's testimony that Ingalls was at the oil station. None of the circumstances furnished legitimate proof of the guilt of the defendant. They had a tendency to prejudice the defendant because the jurors knew that Bennett Olson had been convicted with his father giving material testimony as to the presence of Ingalls; and besides these jurors were their neighbors of the county.

In view of a new trial it is suggested that defendant's testimony that he sustained an accident prior to his son's trial which had impaired his memory, while perhaps not greatly important nor calling for a reversal, might well have been received; and perhaps the charge, which proceeded in much detail, might have been more helpful if more direct and less in detail.

Order reversed.

WILSON, C. J. (dissenting).

I dissent.