THE STATE v. PEARL ARMSTRONG, Appellant.—87 S. W. (2d) 164.

Division Two, November 5, 1935.

*Maurice Hoffman* and *Horace Merritt* for appellant.

*Roy McKittrick*, Attorney General, and *Frank W. Hayes*, Assistant Attorney General, for respondent.

TIPTON, P. J.—We will adopt the statement of facts of this case from the respondent's brief, as the appellant concedes it to be correct.

"This is an appeal from a judgment rendered by the Circuit Court of Buchanan County, Missouri, Division No. Three, at St. Joseph, convicting the appellant of perjury. She was sentenced to four years' imprisonment in the State penitentiary. Timely motion for a new trial was filed and overruled, after which judgment was rendered and sentence pronounced in accordance with the terms of the verdict. Defendant brings this appeal.

"Mr. T. P. Surface owned a restaurant in St. Joseph, Buchanan County, Missouri. On June 11, 1933, about eleven-thirty P. M. he was held up and robbed by Jack DeHart and Jim Nave. DeHart was prosecuted for robbery and the appellant testified for the defendant DeHart. The appellant's testimony in the trial of DeHart was introduced in evidence. At the trial the appellant testified that on June 11, 1933, she, Jack DeHart and Jim Nave were in Patee Park at Ninth and Penn streets in St. Joseph before supper. They went to their residence to get supper and invited Jack DeHart to go with them. After supper they went back to the park and Ellis Nave came to the park and told Jim Nave about his brother being in town and Jim left. Appellant testified it was about nine o'clock P. M. when they arrived at the park after supper and that she and the defendant DeHart stayed in the park until around eleven-thirty that evening when the police officers came and arrested DeHart. She testified at DeHart's trial, that he did not leave the park at any time between nine o'clock and eleven-thirty.

"DeHart was tried in Judge Gaddy's court, was convicted and sentenced for robbery in the first degree and given ten years' imprisonment. The record of the trial was introduced in evidence. The information charging DeHart with the crime was introduced in evidence. The record disclosed that the appellant was sworn as a witness and took the usual oath. To substantiate the charge that the appellant was guilty of perjury in stating that Jack DeHart was with her in the park on that date continuously from nine P. M. until eleven-thirty P. M., the State put several witnesses on the stand.

"Myrtle Barcus, on June 11, 1933, lived at 523 South Tenth Street in St. Joseph. About ten-forty P. M. of that evening she testified that she saw DeHart in front of her place of business and he inquired of her what time it was and left going North. Patee Park was in the 1100 block, north of the witness's place of business.

"Officer Hulett lived directly across the street from Patee Park. He had known Jack DeHart for about twenty years and he stated that he saw DeHart and Jim Nave in the park all day on June 11th. The witness went to work as patrolman about ten P. M. that evening and stated that he saw DeHart going North on Ninth Street around nine-thirty P. M. at the park. When the witness and officer Burnett

arrested DeHart at Patee Park they were all sitting on a bench and Ellis Nave handed the appellant something which she attempted to put in her stocking and it developed that the package was seven or. eight $1 bills.

"The appellant was arrested on October 25, 1933, and was taken to the police station. On October 26, 1933, she signed a statement in which she admitted that she was a witness and testified for Jack DeHart in the case of State of Missouri v. Jack DeHart. She stated that her testimony was to the effect that she, DeHart, Ellis Nave and Jim Nave were in Patee Park on June 11, 1933, a little before nine P. M. until they were arrested, around eleven-thirty or twelve o'clock, with the exception of Jim Nave who left the park earlier in the evening. She stated that Jack DeHart actually left the park about nine o'clock P. M. with Jim Nave and returned to the park about a half hour before he was arrested. She stated that when she testified in the DeHart trial he was in the park from a little before nine o'clock until the time of his arrest and that such statement was false and untrue. In her statement she stated that she read the confession; that it was made of her own free will, without any threats or promises, hope or reward after she had been advised on her rights. The statement was witnessed by Charles Enos, chief of police, C. E. Smith, detective on the force, J. R. Duncan, chief of detectives, Tom Burnett and Roy Crissman. These officers testified that they were present at the time she signed the statement; that the appellant read the statement in their presence and signed it. Witness Crissman stated that the appellant was advised as to her constitutional rights before the statement was made and that she wanted to plead guilty. Chief Duncan testified that she was asked whether or not she wanted an attorney when advised that she was going to be charged with perjury and she declined to have an attorney. Other witnesses testified that there was no duress or promise held out to induce the signing of the statement. The appellant did not offer any testimony."

The appellant contends that the trial court erred in receiving in evidence that part of the court records in the DeHart case which set forth the results of the DeHart trial.

As previously stated a transcript of the appellant's testimony in the DeHart case was introduced, also a record showing that she had been sworn before she gave her testimony and the record of the verdict in that case showing that DeHart had been convicted. It is the introduction of that part of the record showing the verdict that the appellant claims as error.

Section 3878, Revised Statutes 1929, defines perjury as follows:

"Every person who shall willfully and corruptly swear, testify or affirm falsely to any material matter, upon any oath or affirmation, or declaration, legally administered, in any cause, matter or proceeding, before any court, tribunal or public body or officer, and

whoever shall falsely, by swearing or affirming, take any oath prescribed by the Constitution of this state, or any law or ordinance thereof, when such oath shall be legally administered, shall be deemed guilty of perjury.''

Thus, we see that the essential elements of perjury are that the accused willfully testified falsely to a material matter in a proceeding before a court having jurisdiction after an oath had been legally administered to him. The results of the trial in which the accused is alleged to have committed perjury is immaterial.

We have been cited no Missouri case directly on this point, however, from our own research, we have found the case of State v. Wakefield, 73 Mo. 549, l. c. 554, wherein we said:

''So far as this prosecution for perjury is concerned, it does not matter whether the Police Commissioner or Commissioners were guilty or not. The failure to indict them, or one of them, might possibly have been owing to the perjury herein alleged. If one falsely swears on a trial of A for murder that he saw him shoot the deceased, he is guilty of perjury, although, in fact, A was guilty and was convicted of the murder. So, if he had been acquitted, the witness who thus falsely testified would be none the less guilty of perjury. The guilt of one falsely swearing does not depend upon the result of the proceeding in which it occurred.''

The Supreme Court of Minnesota in the case of State v. Olson, 242 N. W. 348, l. c. 349, said:

''Whether there was a conviction or an acquittal or a mistrial was immaterial. The question was whether Martin Olson willfully gave false and material testimony—not whether Bennett Olson was acquitted or convicted. The proof that Bennett Olson was found guilty might suggest that the jurors who tried him did not accept the testimony of the defendant that Ingalls was at the filling station. Nor was it necessary to show who the particular jurors called or those who rendered the verdict were. The showing gave the jury the names of twelve of their fellow citizens of the county who found Bennett Olson guilty and perhaps disbelieved the defendant's testimony that Ingalls was at the oil station. None of the circumstances furnished legitimate proof of the guilt of the defendant. They had a tendency to prejudice the defendant because the jurors knew that Bennett Olson had been convicted with his father giving material testimony as to the presence of Ingalls; and besides these jurors were their neighbors of the county.''

In the case of Starnes v. State, 66 S. W. (2d) 335, the Court of Criminal Appeals of Texas held that the introduction in evidence of the result of the case where the perjury was committed was reversible error. In its opinion the court said:

''Every element of the offense of perjury, as laid down in our statutes and discussed in State v. Peters, 42 Tex. 7; West v. State, 8 Tex. App. 119; Warren v. State 57 Tex. Crim. Rep. 262, 122 S. W.

541, and others, can be established without any introduction of the fact of conviction of the accused upon whose trial the alleged perjury was committed, if in a criminal case, or as to who was successful in the trial of a civil proceeding in which such perjury is alleged to have been committed. The state can show the pendency of the cause wherein the perjury is alleged to have been committed, by the pleadings, dockets, and minutes, supplemented by such oral testimony as may be needed.''

Again the court said:

''The fact that this appellant had been sworn to testify in a proper proceeding in a court before a judge and jury, which court had jurisdiction, and which jury was duly sworn in such case, and that the testimony then given by him was material to an issue in such case, were all matters of inducement, and, when the perjury is laid as committed upon a trial, they are necessarily provable, but same can all be established without the introduction of any testimony as to the result of such former trial, as we have above stated. If this be true, and it is true, why go on and tell the jury, trying this accused for swearing to a lie in the particular case alleged, that twelve or six other men trying that case and hearing his testimony, now alleged to be false, rendered a verdict the logical effect of which proof is to put before the present jury the fact that said other jury refused to accept as true the testimony of the accused now sought to be proven false. Certainly the jurors in such former trial could not be put one by one on the witness stand and had to swear that they believed that in said former trial this appellant told a lie, yet in substance and effect this is put before this jury by proof of the verdict they returned.''

To the same effect are the following cases: Wilkinson v. People (Ill.), 80 N. E. 699; Jordan v. State (Ala.), 74 So. 864.

We think all that is necessary for the State to prove in a perjury case is that the accused, after being legally sworn, willfully testified falsely and gave testimony material to the issue. All testimony which does not directly or indirectly tend to prove these facts should be excluded. As the result of the DeHart trial was immaterial it should have been excluded, and we think its admission was prejudicial error.

In her brief the appellant also complains of the prosecuting attorney referring to the result of the DeHart case in his argument to the jury. At the next trial, with this evidence excluded, of course the prosecuting attorney will make no reference to it.

It follows that the judgment of the trial court should be reversed and remanded. It is so ordered. All concur.