611 P.2d 1107
**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Emilio NARANJO, Defendant-Appellant.**

**No. 3969.**

Court of Appeals of New Mexico.

Nov. 27, 1979.

Jeff Bingaman, Atty. Gen., Marcia E. White, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Ralph M. Montez, Kegel & McCulloh, Santa Fe, Marchiondo & Berry, Albuquerque, for defendant-appellant.

## OPINION

SUTIN, Judge.

Defendant was charged by indictment with five counts of perjury in violation of § 30–25–1, N.M.S.A.1978. Two counts were dismissed by the court before trial and two counts were dismissed at the close of the State's case. The only count submitted to the jury was Count IV. Defendant was convicted and appeals. We reverse.

Because of the political and social problems involved in Rio Arriba County, we shall discuss and decide every important issue on this appeal. Each of the District Judges in the First Judicial District recused themselves. Toney Anaya, then Attorney General, disqualified himself and his staff from investigating and prosecuting former members of the Rio Arriba County Sheriff's Office. Defendant was a former Sheriff.

Defendant has been active in politics for 30 years. He was Undersheriff and Sheriff of Rio Arriba County, a United States Marshall, a State Senator from Rio Arriba County, Democratic County Chairman for 27 years, Rio Arriba County Manager and Law Enforcement Coordinator who reported to the County Commissioners. Defendant worked with the Highway Commission in its agreement with the County relative to fixing roads, and he organized an ambulance service. Defendant was a long-standing, powerful political figure. Nevertheless, defendant stood on an equal footing with every defendant charged with a crime, be he a democratic or republican politician, popular or unpopular, wealthy or poor, gifted or impoverished, educated or ignorant. Defendant was entitled to a fair trial, and to every protection granted to persons under the law. We follow the philosophical approach expressed in *Gordon v. State,* 104 So.2d 524, 529–30 (Fla.1958):

It should be kept in mind that these appellants were being prosecuted on charges of perjury and subornation thereof. We are not here dealing with violations of the election laws or breaches of rules of political morals. A studious examination of this record produces the inescapable conclusion that unfortunately throughout the trial resentment against alleged political misprisions and politically offensive conduct was permitted to permeate the proceedings. While this is quite understandable in the light of the political atmosphere that prevailed at the time, nevertheless, the rights of these appellants who were on trial for two of the noxious charges in the Criminal Code cannot be measured by our concept of political morality. . . . We here deal with perjury and subornation of perjury and nothing else.

One wrongfully convicted must not be deprived of vital rights of citizenship pending an appeal. To prevent an irreparable injury is not only necessary but obligatory, because "justice delayed, is justice denied."

A. *The indictment was insufficient upon which to charge perjury.*

 Section 30–25–1, N.M.S.A.1978 reads in pertinent part:

Perjury consists of making a false statement under oath or affirmation, material to the issue or matter involved in the course of any judicial . . . proceeding, knowing such statement to be untrue.

Count IV of the indictment charged that in the case of State v. Morales, defendant made a false statement under oath "that he saw ·Ruben Vigil take a paper bag from Moises Morales' truck [this is the false statement], [this statement was false] in that he gave specific answers to the following questions:

'Q. Did you see him find anything inside the truck?

A. Yes as I was holding the flashlight he was putting his hand under the driver's side of the truck and he took out what appeared to me a grocery bag.

Q. You testified Sheriff before I left the court room that you saw him find the bag?

A. He pulled it from under the seat of the driver's side of the truck.

Q. I am going to hand you what has been marked State's Exhibit No. 1 and I ask you if you recognize the bag?

A. Yes sir I do.

Q. Would you please tell the Court and Jury where you recognize that bag from?

A. That is the bag that came in the group that Deputy Vigil had from under the truck on the driver's side which is Morales' pick-up.

[The alleged false statement was true.]

Q. And then what did you do after that bag was pulled out?

A. He [Vigil] opened the bag and he put in the flashlight and the bag looked like it was marijuana appeared to be marijuana.

said defendant knowing such statement to be untrue . . . .' "

The trial court denied defendant's motion to dismiss the indictment for failure to contain the essential elements of perjury. We disagree. This was prejudicial error.

 The indictment charged defendant with making a false statement in the case of State v. Morales, that defendant saw Ruben Vigil take a paper bag from Moises Morales' truck. Defendant testified that he did see Vigil take a bag from Morales' truck. The statement made was true, not false, and was not even a material issue. The material issue was whether the bag contained marijuana. To constitute perjury in a judicial proceeding, testimony must be material to the issue or matter involved. *State v. Montoya,* 77 N.M. 129, 419 P.2d 970 (1966).

To charge defendant with perjury, the indictment would have to read that defendant made a statement under oath that he saw Ruben Vigil take a paper bag from Moises Morales' truck *which bag contained what appeared to be marijuana;* that this statement was false and that defendant

knew it was false at the time he made it. This was the content of the first instruction read to the jury. The indictment did not charge defendant with making that false statement, and the indictment failed to state the offense of perjury.

■ Rule 8(a) of the Rules of Criminal Procedure provides that an indictment must allege such facts as are necessary to give defendant notice of the crime charged in sufficient detail to enable him to prepare his defense. *State v. Foster*, 87 N.M. 155, 530 P.2d 949 (Ct.App.1974). In perjury cases, we must give the language used its ordinarily accepted meaning and grammatical construction so that a person of common understanding will be able to know what is intended. The law will not compel the defendant to hazard a guess at what is meant by the language used. *State v. See*, 4 Wash. 344, 30 P. 327, 746 (1892).

■ In perjury cases, an indictment must embrace every element of the offense in the language of the statute with sufficiently definite averments to advise the accused with reasonable certainty of the crime with which he is charged, to enable him to prepare his defense, to protect him against a subsequent prosecution for the same offense. *Travis v. United States*, 123 F.2d 268 (10th Cir. 1941); *Foster v. United States*, 76 F.2d 183 (10th Cir. 1935).

The indictment in the instant case did not state an offense of perjury nor give defendant the protection to which he is entitled under the law.

B. *The indictment should have been dismissed and defendant discharged.*

■ The Attorney General appointed Joseph Caldwell, who was the District Attorney of the Eighth Judicial District, to the position of " 'Special Prosecutor' . . . as a Special Assistant Attorneys General," with the power to investigate and prosecute in his own manner, allegations of perjury by former members of the Rio Arriba County Sheriff's Office. As such "Special Prosecutor," Caldwell stipulated with defendant that Toney Anaya, the Attorney General, his office and staff were disqualified from investigating or prosecuting defendant due to conflicts of interest. The reasons were adequately stated.

The stipulation stated that the Deputy District Attorney "informed" Caldwell that he, the Deputy, felt the Office of the District Attorney was disqualified from prosecuting defendant. This information did not disqualify the District Attorney. The District Attorney of the First Judicial District did not disqualify himself. The District Attorney determines whether criminal charges shall be filed and which charges to file. *State v. Session*, 91 N.M. 381, 574 P.2d 600 (Ct.App.1978). *Session* held that the District Court lacked power to make such determinations. The Attorney General also lacked such power. The Attorney General is not authorized to act except upon the failure or refusal of the District Attorney to act in any criminal case. Section 8–5–3, N.M.S.A.1978. The District Attorney did not fail or refuse to act.

The Attorney General lacked any power to investigate and prosecute defendant for perjury either under the laws of this State or by reason of conflicts of interest. Lacking such power, the Attorney General had no authority to appoint Caldwell "Special Prosecutor" as a Special Assistant Attorneys General.

■ Caldwell was sworn in as an aide to the Grand Jury upon being satisfied that he was conducting this investigation and prosecution at the request of the Attorney General. This fact did not wash away the taint of the improper appointment. Caldwell was not lawfully authorized to aid in presenting the facts to the Grand Jury. Prejudice against defendant is presumed. As a result, the indictment must be dismissed and defendant discharged. *State v. Hill*, 88 N.M. 216, 539 P.2d 236 (Ct.App. 1975).

C. *The trial court lacked jurisdiction because the attorney general did not have the power to appoint a "special prosecutor" as a special assistant attorneys general.*

There is nothing in our laws that make the Attorney General superior to a District

Attorney. Neither of them have any common law powers. The constitution and the statutes clearly prescribe and delimit their authority. If Caldwell, acting as a Special Assistant Attorneys General, had no authority to represent the State, the trial court lacked jurisdiction to proceed and render judgment. *State v. Reese*, 78 N.M. 241, 430 P.2d 399 (1967).

■ "True, we have no statute expressly authorizing the appointment of a special prosecuting attorney to appear before the grand jury, or to assist the prosecuting attorney in the trial of criminal causes; yet this court has recognized the inherent power and duty of courts having general jurisdiction of criminal matters to appoint attorneys to assist the prosecutor in the trial of criminal cases." *Williams v. State*, 188 Ind. 283, 123 N.E. 209, 215 (1919). Independent of the statute, the court has inherent power to appoint a special county attorney under any of the circumstances stated therein. "It is essential to the very life of the court that the proper officers be in attendance upon it. The power to appoint such officers is necessary for the protection and existence of the court and absolutely essential to the administration of justice and the enforcement of all our laws." *Hisaw v. State*, 13 Okl.Cr. 484, 165 P. 636, 640 (1917); Annot., *Disqualification of Prosecuting Attorney on Account of Relationship with Accused*, 31 A.L.R.3d 953, 986, § 13 (1970). The Attorney General should have petitioned the District Court to appoint or designate a "Special Prosecutor." Failing to so petition, the District Court, absent jurisdiction, should have dismissed the indictment.

D. *It was erroneous to admit Morales' judgment of acquittal into evidence.*

Immediately prior to trial, defendant filed a motion *in limine* to limit the evidence that the State could introduce. Item 8 referred to the disposition of the *Morales* case. The court initially granted the motion, stating:

The jury has got to decide the same facts, or the same general facts. I don't

know whether it would be the same evidence, but their verdict, whatever evidence that may have been based on, is out.

During trial, the court reversed its ruling and took judicial notice of the fact of acquittal. At the conclusion of Morales' testimony, the court instructed the jury:

Now, the Prosecution has asked the Court to take judicial notice of our official court record. . . .

In that file, there is a jury verdict that's been entered in the files, and the Court is going to take judicial notice of the official court record of that particular case. I am going to instruct you on that point now.

The verdict of that jury against Moises Morales was, "We find the Defendant, Moises Morales, not guilty."

Now, that is given to you as a matter of information. You are not bound by that jury verdict. *You can consider it along with all other facts introduced in this case*, and are entitled to completely disregard it, if you desire. In other words, it's only passed on to you as the outcome of that particular case by a different jury. Do you understand that? [Emphasis added.]

(Jurors shook heads.)

■ It is the general rule that if perjury occurs in a criminal trial, the verdict, judgment of conviction or acquittal in that trial is not admissible in a subsequent perjury trial. It is reversible error. *Gordon v. State*, 104 So.2d 524 (Fla.1958); *State v. Armstrong*, 337 Mo. 967, 87 S.W.2d 164 (1935); *State v. Olson*, 186 Minn. 45, 242 N.W. 348 (1932); *People v. Davidson*, 227 Cal.App.2d 331, 38 Cal.Rptr. 660 (1964); *Starnes v. State*, 125 Tex.Cr. 21, 66 S.W.2d 335 (1933); *State v. Justesen*, 35 Utah 105, 99 P. 456 (1909). See, *State v. Martino*, 25 N.M. 47, 176 P. 815 (1918); *State v. Jackson*, 47 N.M. 415, 143 P.2d 875 (1943); *State v. Dunn*, 92 N.M. 239, 599 P.2d 392 (1979). The various reasons given by the courts are:

(1) It obviously introduces to the jury hearing the collateral issue whether the jury in the prior criminal trial believed or

disbelieved the allegedly perjured testimony.

(2) The guilt of one allegedly committing perjury does not depend upon the result of the proceeding in which it occurred.

(3) Whether there was a conviction or acquittal in the prior criminal case is immaterial.

(4) The verdict in the previous case was irrelevant.

(5) The verdict in the previous case is unnecessary and harmful.

*Starnes* says:

. . . Certainly the jurors in such former trial could not be put one by one on the witness stand and had to swear that they believed that in said former trial this appellant told a lie, yet in substance and effect this is put before this jury by proof of the verdict they returned. All these cases lay down the rule that the present jury has no right to consider the result of the former case as establishing the fact that the accused in this case then lied, and all agree that, *unless the jury are told in the present case not to base their verdict upon the fact that another jury believed the accused lied when he gave the same testimony before them*, the case must be reversed. . . . [Id. 338.] [Emphasis added.]

In the instant case, the trial court failed to instruct the jury that the verdict should not be based upon the fact that the previous jury believed defendant lied when he gave the same testimony before them. In fact, the trial court told the jury it could consider the verdict "along with all other facts introduced in this case."

The reason and logic of *Starnes* is a realistic approach to this problem. If Morales had been convicted, the offer in evidence by defendant of the verdict of the jury would have been denied for the same reasons. In the instant case, the court, in effect, told the jury: (1) in the former criminal trial, defendant lied when he testified that Morales possessed marijuana; (2) that Morales was acquitted; and (3) since defendant lied in the former trial, he is guilty of perjury in this trial.

■ The fallacy of this syllogism is obvious. Defendant may not have lied in the former trial. He could have told the truth but the jury did not believe him because of his faulty memory, reputation and demeanor. *Davidson, supra.* Even if defendant's testimony was not true, but defendant believed it to be true, he was not guilty of "perjury." Testimony to a fact that is not true but believed to be true by the one testifying is not "perjury." *Pitman v. State*, 487 P.2d 716 (Okl.Cr.App.1971).

■ The State claims that all of the non-New Mexico cases cited supra, provided in most part by the State, were all decided before the enactment of the more liberal rules of evidence. This argument is based upon Rules 201, 401 and 403 of the Rules of Evidence.

Under Rule 201, the trial court can take judicial notice that the jury returned a verdict of not guilty in the Morales case. However, as a piece of evidence, it must pass the test of relevance before it is admitted.

Relevant evidence is defined by Rule 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination more or less probable than it would be without the evidence." But the State turned to no authority to support its position that the verdict of a jury was relevant evidence. Its only claim was that the trial court believed it was relevant and therefore it was conclusive. We disagree.

In *Davidson, supra*, the court said:

The State's contention, if carried to its logical conclusion, would subject all witnesses to prosecution for perjury where their testimony is not consistent with the verdict. The policy of having witnesses testify at their peril would discourage the giving of testimony and have an unfortunate effect on the administration of justice. *We conclude that the verdict in the Giddings case was irrelevant and thus not admissible.* [Emphasis added.] [38 Cal. Rptr. at 663.]

In *Armstrong, supra,* the court said:

Thus, we see that the essential elements of perjury are that the accused willfully testified falsely *to a material matter* in a proceeding before a court having jurisdiction after an oath had been legally administered to him. *The results of the trial in which the accused is alleged to have committed perjury is immaterial.* [Emphasis added.] [87 S.W.2d at 165–6.]

The New Mexico perjury statute reads:

Perjury consists of making a false statement under oath or affirmation, *material to the issue* . . .. [Emphasis added.]

In *Martino, supra,* the New Mexico Supreme Court perfunctorily said:

[W]e hold that the record of conviction of a gambler, on his plea of guilty to an information against him for gambling for money, is not admissible to prove the gaming for money on the trial of one charged with unlawfully and knowingly permitting such game to be played upon premises occupied by him. [25 N.M. at 48, 176 P. at 816.]

The State continues with additional argument that the verdict in the *Morales* trial was not collateral, and was harmless error. These contentions do not merit a response.

E. *The evidence was insufficient to support a verdict of guilty.*

The State proceeds on the theory that the indictment charged defendant with falsely testifying that he saw Ruben Vigil take a paper bag from Morales' truck containing what appeared to be marijuana. We shall accept the State's position.

The State says that "the jury reached its verdict after comparing the testimony of Morales and Naranjo and their depositions and interrogatories and observing them in court."

■ *First.* The rule established in New Mexico is that evidence of one witness alone, not corroborated by any other evidence, is insufficient to warrant a conviction on a charge of perjury. *State v. Borunda,* 83 N.M. 563, 494 P.2d 976 (Ct.App. 1972); *Territory v. Williams,* 9 N.M. 400, 402, 54 P. 232 (1898). *Williams* said:

. . . This evidence alone, and uncorroborated, is not such proof as the law requires in trials for perjury; it is one oath against another, and if the citizens of this territory can be convicted of perjury and sent to the penitentiary for a term of years, and their characters ruined for life by oath against oath, as in this case, then the best citizens may well shun the courts as a traveler would quicksand.

. . .

Under this rule alone, there was insufficient evidence to convict defendant under a charge of perjury.

■ *Second.* There was no evidence that the testimony of Naranjo in the *Morales* case was false testimony under oath made on a material matter with knowledge that it was false. These are the essential elements of perjury. *Diamond v. State,* 270 So.2d 459 (Fla.App.1972).

Morales testified as follows:

Q. Have you ever dealt [in] marijuana?

A. No, I have never.

Q. Never sold it?

A. No.

Q. Never had any marijuana in your possession?

A. Never.

\* \* \* \* \* \*

Q. Now, between *any time during the day of November 4, 1975,* did anyone else use your truck?

A. Yes.

Q. Who used it?

A. Kiko Trujillo and Campos.

Q. Kiko Trujillo?

A. Yes, and Campos; Fernando Campos.

Q. And did they use it together or separately?

A. Separately. [Emphasis added.]

\* \* \* \* \* \*

(Morales owned a 1974 Dodge Power Wagon truck. *On the night of November 4,*

1975, he was stopped in his truck on the highway by Naranjo, Ruben Vigil and Anthony Griego.)

Q. Now on November 4, 1975, when you looked inside the cab of this truck, tell the jury what was inside there.

A. There were clothes in a bag, dirty clothes [other miscellaneous items]. . .

Q. Now, the bags, what kind of bags were they?

\* \* \* \* \* \*

A. I'm not sure what kind of bag it was but there was a bag of clothes. . .

\* \* \* \* \* \*

(After Morales was stopped on a highway by defendant, Vigil and Griego, defendant and Naranjo sat in the back seat of defendant's car.)

Q. So, you saw him [Vigil] walk up from the police car to your truck with a white bag in his hand; is that correct?

A. Yes.

Q. And, then, what happened?

A. And, then, he got into the truck, and they motioned something to each other. Ruben and Anthony.

\* \* \* \* \* \*

(Ruben Vigil drove Morales' truck to Espanola.)

Q. Okay, at the trial, did the State introduce what purported to be 38 ounces of marijuana into evidence?

A. Yes, but there was two missing.

Q. Two what missing?

A. Two ounces, two bags.

Q. Okay, now, so they introduced 36 ounces of marijuana.

A. Yes.

Q. Did Emilio Naranjo testify at that trial?

A. Yes.

Q. Were you present when he testified?

A. Yes.

\* \* \* \* \* \*

Q. Okay, and what did he say about possession of marijuana?

A. He said that it was in my truck.

Q. Okay, do you recall what he said about finding the marijuana?

A. He said he had found it in the bottom of my truck.

Q. Were you present at the Deposition of Emilio Naranjo on March 22, 1976?

A. I think I was.

Q. Okay, did he testify at the Deposition?

A. Yes.

Q. What did he say about you having marijuana in your possession at that time?

A. He said that I had some marijuana in my truck.

Does the foregoing testimony of Morales establish that defendant lied when he made the following statement:

"He [Vigil] opened the bag and he put in the flashlight and the bag looked like it was marijuana appeared to be marijuana."

The "Special Prosecutor" did not question Morales on whether he had marijuana in his truck the night of November 4, 1975, nor whether defendant's statement was false and known to be false. Morales and defendant sat together in the defendant's car. Morales did not testify that defendant's statement was false because Vigil and defendant were not together outside the truck; that Vigil did not open Morales' bag and did not put the flashlight into Morales' bag; that defendant could not see what appeared to be marijuana because there was no marijuana in his bag. This whole subject matter was not presented to the jury.

■ It is incumbent upon the State to prove the allegations of the indictment as therein laid. *Capps v. State*, 29 Ala.App. 192, 194 So. 689 (1940). A material variance existed between the allegations in the indictment and the proof. *Commonwealth v. Karafin*, 224 Pa.Super. 449, 307 A.2d 327 (1973). A substantial variance in this regard is fatal. *People v. Ames*, 61 Cal. App.2d 522, 143 P.2d 92 (1943).

Requirements of proof in a perjury case are the strictest known to the law, outside of treason charges. *State v. Olson*, 92 Wash.2d 134, 594 P.2d 1337 (1979); *State v. Wallis*, 50 Wash.2d 350, 311 P.2d 659 (1957). To meet this challenge, the State must begin with the fact that an accused is clothed with a presumption that one will tell the truth when under oath and until this presumption is dispelled, one did tell the truth under oath. If the State does not prove the falsity of the statement under oath, the presumption must prevail that he did tell the truth. *Richardson v. State*, 45 Ohio App. 46, 186 N.E. 510 (1933). Neither is the State entitled to a conviction for perjury under this rebuttable presumption merely on proof that statements under oath were at variance with previous unsworn statements. *State v. Goodin*, 56 Ohio St.2d 438, 384 N.E.2d 290 (1978). The presumption not having been dispelled, the truth of defendant's statement stands.

Next, to sustain a conviction for perjury, the evidence must be strong, clear, convincing and direct, *Paternostro v. United States*, 311 F.2d 298 (5th Cir. 1962); *United States v. Rose*, 215 F.2d 617 (3rd Cir. 1954), and based upon proof beyond a reasonable doubt. *Commonwealth v. Giles*, 353 Mass. 1, 228 N.E.2d 70 (1967); *United States v. Brandyberry*, 438 F.2d 226 (9th Cir. 1971); *State v. Heyes*, 44 Wash.2d 579, 269 P.2d 577 (1954); *State v. Stilwell*, 109 Or. 643, 221 P. 174 (1923); *Commonwealth v. Yanni*, 208 Pa.Super. 191, 222 A.2d 617 (1966); *Van Liew v. United States*, 321 F.2d 664 (5th Cir. 1963). Evidence which is merely probable is not enough. *Rose, supra.*

A careful review of the testimony shows that the State failed to present testimony that was strong, clear and convincing. None was presented to establish perjury. The State failed to prove that defendant was guilty beyond a reasonable doubt.

A heavy burden is placed upon the State to prove a person guilty of perjury. The State failed to meet that burden. The evidence was insufficient to support a conviction.

Reversed. Defendant is discharged.

IT IS SO ORDERED.

LOPEZ, J., concurs.

WALTERS, J., specially concurring.

WALTERS, Judge (specially concurring).

I agree with the result reached, and with respect to the issues delineated in the majority opinion, I wish to state my additional reasons for reversal.

A. *The indictment was insufficient upon which to charge perjury.*

In its entirety, Count IV read as follows: . [The grand jury of Santa Fe county, State of New Mexico, accuses the defendant of the following crime[s]:

### COUNT IV

PERJURY, in that on or about the 4th day of December, 1976, the Defendant, EMILIO NARANJO, did make a false statement under oath or affirmation, material to the issue or matter involved in the course of a judicial proceeding to wit: Before a Judge and Jury in the case of State of New Mexico vs. Moises Morales, the Defendant did testify that he saw Ruben Vigil take a paper bag from Moises Morales' truck, in that he gave specific answers to the following questions:

"Q. Did you see him find anything inside the truck?

A. Yes as I was holding the flashlight he was putting his hand under the driver's side of the truck and he took out what appeared to me a grocery bag.

Q. You testified Sheriff before I left the court room that you saw him find the bag?

A. He pulled it from under the seat of the driver's side of the truck.

Q. I am going to hand you what has been marked State's Exhibit No. 1 and I ask you if you recognize the bag?

A. Yes sir I do.

Q. Would you please tell the Court and Jury where you recognize that bag from?

A. That is the bag that came in the group that Deputy Vigil had from under the truck on the driver's side which is Morales' pick-up.

Q. And then what did you do after that bag was pulled out?

A. He opened the bag and he put in the flashlight and the bag looked like it was marijuana appeared to be marijuana."

said defendant knowing such statement to be untrue, contrary to Section 40A–25–1, N.M.S.A., 1953 Compilation, as amended [now § 30–25–1, N.M.S.A. 1978].

The narrative portion of the charge contained in its first paragraph accuses defendant of falsely testifying "that he saw Ruben Vigil take a paper bag from Moises Morales's truck." The specific questions and answers which purportedly contain the false testimony include three questions and answers relating to the suspected contents of the bag. The inclusion of those last three questions and answers seems to enlarge the basic charge which accused defendant of falsely testifying that he saw Vigil take a paper bag from Morales's truck, and to add that he also falsely testified that it appeared to contain marijuana.

The testimony quoted, however, even considered together with the first paragraph itself, does not satisfy the pleading requirements for an assignment of perjury first laid down in *Territory v. Lockhart*, 8 N.M. 523, 45 P. 1106 (1896). In that case the court established several rules, still the law in New Mexico, regarding the formulation of a charge of perjury. It is necessary, wrote Justice Bantz, that (1) the allegations be direct and specific, not in terms of uncertain meaning or by way of implication; (2) the indictment must particularize wherein the testimony was false, a general allegation of falsity being insufficient; and (3) if the offense encompasses many allegedly perjurious statements "of which some might be true and used only as the vehicle of falsity," the defendant must be told in the indictment "wherein and to what extent

the statements alleged to have been made by him were false."

Under the *Lockhart* decision, the indictment in this case is fatally defective. Nowhere is it particularized what is the truth regarding the allegedly false statements. Is the truth that the bag was not a paper bag? That it was not a bag at all? That there was no bag? That it was not Morales's truck? That defendant did not or could not see what was taken from the truck, or that there was nothing for him to see being taken from the truck? That Vigil did not do it, but that someone else did? Or that no one took anything from Morales's truck?

Or is the charge expanded to imply that neither Vigil nor Naranjo looked into the bag? Or that the bag did not contain what appeared to be marijuana? Or that what appeared to be marijuana was not marijuana?

The ambiguity of the charge—*without any allegation of what was false about defendant's testimony*—leads to endless speculation of the offense Naranjo was required to defend against. The statement of an indictment must contain the essential *facts* constituting the offense. Rule 5(d), N.M.R. Crim.Proc.1978.

I cannot concur with the majority's assertion that defendant's statement "was true." His testimony that he observed Vigil remove a sack from Morales's truck was uncontroverted, and it very well may have been true. We do not decide questions of fact, however, and I decline to join in that portion of the majority opinion. My conviction in the insufficiency of the indictment lies in its failure to particularize wherein Naranjo's previous testimony was false.

One of defendant's numerous motions for dismissal of the indictment for insufficiency, ambiguity, or variance should have been granted.

B. & C. *The Attorney General was without authority to appoint a Special Assistant Attorney General to investigate charges and prosecute defendant.*

I concur generally with the statements by the majority concerning the attorney gener-

al's absence of power "to displace the district attorney" in this matter. *See State v. Reese*, 78 N.M. 241, 245, 430 P.2d 399 (1967). The court also said in *Reese*, at 245–46, 430 P.2d at 403, that "[t]here is nothing in our laws making the attorney general the superior of the district attorneys," or ". . . remotely suggest[ing] a right to supplant or take over from a district attorney who is performing his legal duties."

As the majority opinion notes, a deputy district attorney thought the district attorney's officer was disqualified. This does not sufficiently establish a "failure or refusal of [the] district attorney to act," which would authorize the attorney general to step in and act on behalf of the state. But even giving the deputy district attorney's beliefs the firmness of a refusal to act, there is no question that the attorney general affirmatively disqualified himself and his office, because of conflicts of interest and to avoid the appearance of impropriety, from participating in any phase of the proceedings against defendant. Having done so, the entire staff of the attorney general's office was disqualified from participating, *see State v. Chambers*, 86 N.M. 383, 524 P.2d 999 (Ct.App.1974), and, lacking any common-law powers, the attorney general had only such statutory powers as are conferred by the legislature to appoint a successor prosecutor.

The attorney general is authorized under § 8–5–5, N.M.S.A.1978, to appoint assistant attorneys general. But the earlier disqualification of his office and its staff would also flow to a newly appointed staff member. Thus § 8–5–5 is unavailing. Section 8–5–4, however, permits the attorney general to employ "special legal assistance . . . to protect the interest of the state," provided he obtain "the consent and approval of the governor upon showing made by the attorney general that his department cannot for reasons stated perform such services."

It seems to me that this is the only means by which a special prosecutor could have been named, had there been a valid·disqualification by the district attorney as well as the attorney general. Its procedure was not followed either.

The appointment of the special prosecutor was invalid; his appearance before the grand jury contaminated its proceedings, *State v. Hill*, 88 N.M. 216, 539 P.2d 236 (Ct.App.1975); and his appearance as the trial prosecutor was unauthorized by constitution, statute, or common law. *State v. Reese, supra.*

### D. *Evidence of Morales's acquittal was improperly admitted.*

I agree with all that the majority has said on this issue. Additionally, I would point out that in *State v. Jackson*, 47 N.M. 415, 418, 143 P.2d 875 (1943), cited by the majority, our Supreme Court approved the ruling of a Massachusetts case bearing upon the prejudicial introduction of a verdict of acquittal of another defendant at the trial of the accused. The language sanctioned may be paraphrased to fit the facts of this case:

The record of the former trial of [Morales], if it had been properly offered [as it was], was inadmissable on the question of the guilt or innocence of the defendant [Naranjo]. The guilt or innocence of [Morales] was not in issue.

I reiterate Justice Bickley's comment upon the correctness of the Massachusetts decision: ". . . [I]t is a poor rule that does not work both ways."

### E. *There was no evidence to support a guilty verdict.*

I wish only to emphasize the portions of the majority opinion which point out that there was a total lack of any questioning by the State or testimony from any of its witnesses regarding what defendant might or might not have seen on the night of November 4th. Defendant's testimony, as set out in Count IV, was uncontradicted by anyone. A jury may not return a verdict which finds a defendant guilty of lying under oath about a material matter when there is no evidence that any of his testimony was false, for the simple reason that jurors must base their verdicts on evidence presented and the reasonable inferences to

be drawn from such facts. But when there is a total absence of evidence—here, that either Naranjo did not see a sack removed from Morales's truck, or that there was no marijuana in the sack—the reviewing court must set aside the conviction. *State v. Torres*, 78 N.M. 597, 435 P.2d 216 (Ct.App. 1967); *State v. Salazar*, 78 N.M. 329, 431 P.2d 62 (Ct.App.1967).

A criminal defendant need not prove his innocence; the State bears the burden of proving his guilt beyond reasonable doubt. *See State v. Henderson*, 81 N.M. 270, 466 P.2d 116 (Ct.App.1970). That burden requires presentation of evidence, and if the State produces none upon the charges alleged, defendant must be discharged. *State v. Salazar, supra.*

I agree that for all of the above reasons the conviction must be reversed and defendant discharged.