**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Gerald Lee MAVES, (# 14371) Defendant and Appellant,**

**and**

**Thomas R. Maves, (# 14372) Defendant and Appellant,**

**and**

**Kathleen R. Maves, (# 14373) Defendant and Appellant.**

**Nos. 14371–14373.**

Supreme Court of South Dakota.

Argued May 23, 1984.

Decided Nov. 28, 1984.

Rehearing Denied Jan. 3, 1985.

Mark A. Moreno, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

James E. Kessler, Brookings, for defendant and appellant Gerald Lee Maves.

David R. Gienapp of Arneson, Issenhuth & Gienapp, Madison, for defendants and appellants Thomas R. and Kathleen R. Maves.

WOLLMAN, Justice.

Defendants appeal from their convictions on a charge of perjury. We affirm.

Defendants, who are brothers and sister, were charged by separate informations with having committed perjury on May 21, 1982, during the trial of defendant Gerald Maves on a charge of grand theft.

The information filed against defendant Gerald Maves stated in part:

That Gary Foster a/k/a "Tattoo Gary" a/k/a "Tattoo" was present in the Lantern Lounge in the City of Brookings, South Dakota, on the 27th day of November, 1981, sometime between the hours of 6:00 o'clock p.m. and 8:00 o'clock p.m. and that on the said date and during the said time period in the said location the said Defendant, GERALD LEE MAVES, purchased a gun from the said Gary Foster, a/k/a "Tattoo Gary" a/k/a "Tattoo" and received a receipt for said gun at the time of such purchase[.]

The information filed against defendant Thomas Maves stated in part:

That Gary Foster a/k/a "Tattoo Gary" a/k/a "Tattoo" was present in the Lantern Lounge in the City of Brookings, South Dakota on the 27th day of November, 1981, sometime between the hours of 6:00 o'clock p.m. and 8:00 o'clock p.m.; and that during the said time period at the said location the said Gary Foster a/k/a "Tattoo Gary" a/k/a "Tattoo" offered to sell the said Defendant a gun and that shortly thereafter the said Defendant observed the said Gary Foster a/k/a "Tattoo Gary" a/k/a "Tattoo" talking to Gerald Lee Maves, the brother of the said Defendant at which time the said Gary Foster a/k/a "Tattoo Gary" a/k/a "Tattoo" had a gun out and was showing it to the said Gerald Lee Maves[.]

The information filed against defendant Kathleen Maves stated in part:

That Gary Foster a/k/a "Tattoo Gary" a/k/a "Tattoo" was present in the Lantern Lounge in the City of Brookings, South Dakota, on the 27th day of November, 1981, sometime between the hours of 6:00 o'clock p.m. and 7:00 o'clock p.m.; and that during the said time period at the said location the said Gary Foster a/k/a "Tattoo Gary" a/k/a "Tattoo" had a conversation with Gerald Lee Maves, the brother of the said Defendant and that thereafter and after the said Gary Foster a/k/a "Tattoo Gary" a/k/a "Tattoo" had left the said location, the said Gerald Lee Maves had in his possession at the said location a gun which the said Gerald Lee Maves then told her that he purchased from the said Gary Foster a/k/a "Tattoo Gary" a/k/a "Tattoo"[.]

Each of the informations also stated that the May 19, 1982, trial of the charge against defendant Gerald Maves "concluded with a jury verdict of guilty ...."

The trial court granted the state's motion, made pursuant to SDCL 23A–11–1, that the three informations be joined for purposes of trial. The basis of the trial court's order was that the charges stemmed from the same transaction or judicial proceeding; that the same or similar evidence would be presented on each of the charges; that the defendants would not be prejudiced by joinder; and that it would be in the interests of judicial economy to join the informations for purpose of trial.

After the jury was empaneled, the state's attorney read the separate informations, as required by SDCL 23A–24–2(1). Following

the opening statement by the state's attorney, an opening statement was made by Kathleen Maves' attorney. The attorneys for Gerald and Thomas Maves reserved making their opening statements. After the first witness for the state had been sworn and asked to state his name, counsel for defendants moved that the charges be dismissed because of the fact that the jury had been informed through the reading of the informations that the earlier trial against Gerald Maves had resulted in his being found guilty. The trial court denied the motion and later instructed the jury that the outcome of the earlier trial was totally irrelevant, should not create any presumption or permit any inference of guilt in the current trial, and should be totally disregarded.

The state introduced evidence that tended to establish that at approximately 7:30 p.m., November 27, 1981, Gerald Maves entered Bill's Sport Shop in Brookings and that shortly after he left the store the employees discovered that a pistol was missing from a display case near which Maves had been standing while he was in the store. The trial court instructed the jury that this testimony should be considered only as against Gerald Maves.

The state introduced from a Brookings police officer that at approximately 9:00 p.m., November 27, 1981, Gerald Maves, in the presence of Kathleen Maves, showed him a handgun of the same make and model as that which had been discovered missing earlier that evening at Bill's Sport Shop and told the officer that he, Gerald, had recently obtained it. The trial court instructed the jury that it should not consider this testimony as against Thomas Maves.

The state then introduced the testimony of Arlo and Alyce Preheim, Mark Helgerson, and Gary and Rebecca Foster concerning Gary Foster's whereabouts on the afternoon and evening of November 27, 1981.

Arlo Preheim, who lives on a farm near Freeman, testified that Gary Foster had lived at the Preheim farm with Arlo and his wife, Alyce, from September until late December of 1981. Arlo testified that Gary

Foster and his then finance, Becky Hauge, who was also living with the Preheims during the period in question, were with the Preheims all day on November 26, 1981, Thanksgiving Day, and the following day, which was Alyce Preheim's birthday. Arlo testified that he and Gary were together all day on November 27 and that in the evening of that day he and his wife, together with Gary and Rebecca and Mark Helgerson went to Lesterville, which is approximately thirty miles southwest of Freeman, and then to Lindy, Nebraska, which is approximately twenty to twenty-five miles from Yankton, South Dakota, where they remained until they returned to the Preheim farm between 3:30–4:00 a.m. on November 28, 1981.

Alyce Preheim's testimony corroborated Arlo's in all material respects, as did Mark Helgerson's and Rebecca Hauge Foster (who had married Gary Foster in March of 1983).

Gary Foster himself testified that he recalled being present at the Preheim farm on November 27 and celebrating Alyce Preheim's birthday by going to some bars with Alyce and Arlo and Becky. In testimony that at the most charitable can only be described as evasive, Gary testified that he did not know whether he had been in Brookings on November 27 and that he did not remember whether or not he had sold a handgun to Gerald Maves on that day.

The state was permitted to read relevant portions of the testimony that defendants had given at the May 1982 trial of Gerald Maves. Although Kathleen Maves objected to the reading of Gerald and Thomas Maves' testimony and Thomas Maves objected to the reading of any of Gerald and Kathleen Maves' testimony, the trial court ruled that the testimony was not prejudicial to the objecting defendants and overruled the objections.

Although the defendants have raised, individually and collectively, a number of issues, we will deal only with those that we consider to have arguable merit.

Defendants contend that the trial court erred in granting the state's motion for joinder of the informations, claiming that they were prejudiced by the introduction of evidence that was admissible only as to one or more of them but not to all. We disagree.

Defendants have no absolute right to be tried separately, and the decision whether there should be separate trials is a matter left to the discretion of the trial court, a decision on which will be reversed only upon a showing of an abuse of discretion. *State v. Iron Shell,* 336 N.W.2d 372 (S.D.1983); *State v. Reiman,* 284 N.W.2d 860 (S.D.1979); *State v. Bonrud,* 246 N.W.2d 790 (S.D.1976). We find no such abuse of discretion here. The trial court made a considered decision, as revealed by the reasons set forth in its order granting the motion for joinder, that all of the relevant considerations bearing upon the issues weighed in favor of a joint trial.

Although in the instant case the trial court was faced with a decision whether to join separately charged defendants, we think that the same considerations that bear upon a trial court's decision whether to grant a motion to sever trials is equally applicable in the instant case. As we recently held, inasmuch as a motion to sever trials is addressed to the trial court's discretion, a clear showing of prejudice and abuse of discretion is required to justify reversal based upon a denial of a motion for severance. Likewise, a defendant must demonstrate affirmatively that the joint trial prejudiced the possibility of a fair trial rather than merely showing that he may have had a better chance for acquittal in a separate trial. *State v. No Heart,* 353 N.W.2d 43 (S.D.1984).

With respect to defendants' claim that they were prejudiced by the evidence that was admissible only as against one or more of them, we have held that the admission of evidence against only one of several defendants does not on its own create sufficient prejudice to justify reversal when proper limiting instructions are given to the jury. *State v. No Heart, supra; State v. Reiman, supra; State v. Bonrud, supra.* In the case before us, the trial court instructed the jury at the conclusion of the testimony of several witnesses that the testimony should be considered against only certain defendants. The trial court instructed the jury at the close of the evidence that: "Each defendant is entitled to have his guilt or innocence of the crime charged determined from his own conduct and from the evidence which applies to him, as if he were being tried alone...." Inasmuch as we presume that the jury followed the limiting instructions, *State v. No Heart, supra; State v. Reddington,* 80 S.D. 390, 125 N.W.2d 58 (1963), defendants were adequately protected against any prejudice resulting from the introduction of testimony that was inadmissible as to them.

As indicated above, the trial court ruled admissible as to all three of the defendants the prior testimony that each had given during the May 1982 trial. Although the trial court might well have given a limiting instruction regarding this testimony also, we conclude that its failure to do so did not result in substantial prejudice to the defendants who objected to the introduction of the testimony. For all the claims of prejudice raised by defendants, the issues before the jury were relatively straightforward and simple.

Defendants contend that the trial court erred in denying their motions to dismiss the charges after the jury was informed through the reading of the informations that the May 1982 trial had resulted in a verdict of guilty against defendant Gerald Maves. We agree with defendants that the jury should not have been informed of the results of the May 1982 trial. *See, e.g., People v. Davidson,* 227 Cal. App.2d 331, 38 Cal.Rptr. 660 (1964); *Gordon v. State,* 104 So.2d 524 (Fla.1958); *State v. Olson,* 242 N.W. 348 (Minn.1932); *State v. Armstrong,* 337 Mo. 967, 87 S.W.2d 164 (1935); *State v. Naranjo,* 94 N.M. 413, 611 P.2d 1107 (Ct.App.1979); *Starnes v. State,* 125 Tex.Cr.R. 21, 66

S.W.2d 335 (1933). We hold, however, that the trial court correctly denied defendants' motions to dismiss on the ground that defendants had waived their objection to that portion of the informations by failing to make a timely objection. SDCL 23A–8–3(3) requires that defenses and objections based on defects in an information must be raised by motion prior to trial. Although the statement contained in the informations regarding the outcome of the May 1982 trial may not have constituted a defect from a strictly technical standpoint, we conclude that what we held in *State v. Lachowitzer*, 314 N.W.2d 307 (S.D.1982) and *State v. Williams*, 297 N.W.2d 491 (S.D.1980), is applicable here. In those cases we pointed out that a criminal trial is not a game where defense counsel may lie in wait with motions or objections that go to the very heart of the prosecution. Here, all of the defendants had several months to review the informations filed against them. That they were aware of the possible prejudice that might arise from the jury's being informed of the outcome of the prior trial is made manifest by the fact that defense counsel were prepared with case citations at the time they moved to dismiss the charges following the reading of the informations. A pretrial motion containing those citations would have prevented that which defendants now claim was prejudicial to them. Having failed to make such a motion, they will not now be heard to complain that the informations were read as filed.

▆ In so holding, we do not suggest that defendants are required to aid in the prosecution of the case against them or to point out to the court or to the state that which the state's case lacks. We merely hold that where an information contains statements that a defendant believes should not be called to the attention of the jury, the defendant must raise the objection in a timely manner as required by SDCL 23A–8–3(3).

▆ Defendant Kathleen Maves contends that the trial court erred in ruling that her allegedly perjurious statements during the May 1982 trial were material. We do not agree. A statement is sufficient to support a charge of perjury "if it is material to any proper matter of inquiry, and if, furthermore, it is calculated and intended to bolster the testimony of a witness on some material point, or to support or attack the credibility of a witness." *State v. Lachowitzer*, *supra*, 314 N.W.2d at 310 (quoting *State v. Circuit Court for Grant and Day Counties*, 69 S.D. 454, 459–60, 11 N.W.2d 659, 661 (1943)). As we held in *Lachowitzer:*

> A statement made by a witness during the course of a trial is also material if it "has a legitimate tendency to prove or disprove some relevant fact irrespective of the main fact at issue, or ... is capable of influencing the court, officer, tribunal or other body created by law on any proper matter of inquiry."

314 N.W.2d at 310 (quoting *State v. Deets*, 195 N.W.2d 118, 122 (Iowa 1972)).

▆ When weighed against these tests of materiality, we conclude that the trial court did not err in ruling that Kathleen Maves' testimony at the prior trial was material.

▆ Defendants also contend that the evidence was insufficient to support the verdict. From what we have outlined above, however, we conclude that this claim is without merit. As we have held many times, the question presented when determining the sufficiency of the evidence on appeal is whether there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt, and in making that determination we accept that evidence, and the most favorable inferences that can be fairly drawn therefrom, which will support the verdict. *State v. Moeller*, 298 N.W.2d 93, 94 (S.D.1980). *See also State v. Huber*, 356 N.W.2d 468 (S.D.1984); *State v. Jorgenson*, 333 N.W.2d 725 (S.D.1983); *State v. Cook*, 319 N.W.2d 809 (S.D.1982). If believed by the jury, the testimony of the state's witnesses established beyond peradventure that Gary Foster was not in Brookings on the evening of November 27,

1981. Once that fact was established, defendants' testimony during the May 1982 trial stood exposed for what it was.

We have examined defendants' remaining claims, and we conclude that the errors they complain of, whether considered individually or cumulatively, do not require reversal.

The judgments of conviction are affirmed.

FOSHEIM, C.J., MORGAN, J., and DUNN, Retired Justice, concur.

HENDERSON, J., dissents.

DUNN, Retired Justice, participating.

WUEST, Circuit Judge, Acting as Supreme Court Justice, not participating.

HENDERSON, Justice (dissenting).

## DISSENT

"Notwithstanding the need for efficiency, a joint trial is inappropriate if it sacrifices a defendant's right to a fair trial." *State v. Reiman*, 284 N.W.2d 860, 866 (S.D.1979). The case herein provides another example of a situation wherein judicial economy must be delegated a lesser priority in order to promote justice. (See my dissent in *State v. No Heart*, 353 N.W.2d 43, 49 (S.D.1984).) I dissent on the affirmance of the order of joinder, which order was entered upon motion by the State and after stiff resistance by defendants.

Three defendants were charged separately with perjury by Information. However, the perjury related to different specific factual statements at a previous trial and were not identical. Differing evidence was applied to the individualized facts of each information. As reflected by the rulings and cautionary instructions to the jury, as the trial progressed, the joinder of three trials into one was an evidentiary nightmare. Perjury cannot be jointly charged against several persons each of whom was separately called and sworn as a witness and each of . whom separately testified falsely in the same criminal prosecution. 2 C. Torcia, *Wharton's Criminal Procedure* § 298 (12th ed. 1975), citing *State v. Herrera*, 28 N.M. 155, 207 P. 1085 (1922). This holding is buttressed by federal authority. "[W]here the offense is such as not to permit of participation or agency, several offenders cannot be joined,—as for perjury ... or the like; because such offenses are in their nature several." *United States v. Charnay*, 211 F.Supp. 904, 907 (S.D.N.Y. 1962). To expect a trier of fact to discern and delineate the differences was impossible, indeed, highly prejudicial. Additionally, evidence was introduced against certain of these defendants which was held inadmissible against certain others. Thus, totally irrelevant and damaging evidence was heard by the jury against the defendant which would not have survived in an ordinary trial. Although this Court held that there was not a particularized showing of any possible prejudice concerning evidence submitted in a joint trial, see *State v. Runge*, 263 N.W.2d 876, 879–80 (S.D.1978), this Court did express this salient thought: "The record does not reflect any testimony was introduced which would not be applicable to all of the defendants." Obviously, that is not the case here. Had these three trials not been joined, the irrelevant and damaging evidence would not have been admitted. The prosecution, by the artful ploy of the Motion for Joinder, tried two brothers and a sister under a guilt by association theory. Even the trial court itself had second thoughts about trying all three defendants together, for it commented on the record, during the trial, "it is difficult when there are three Defendants to be sure that the evidence that is presented is used against the party that [it] is intended to be used against." [1] For a crystalization of this troubled trial judge's comment and conscience, I respectfully refer the reader to the dissent of this author in the case of *State v. Iron Shell*, 336 N.W.2d 372, 377 (S.D.1983), wherein I expressed: "[T]here

1. Joe Hauge, Todd DeBeer, and Dennis Falken were the first three witnesses called in the trial. Their testimony was stricken, all as to appellant Kathleen Maves, pursuant to motion by her counsel.

can be no doubt that the refusal to grant severance in criminal trials carries substantial risks of manifest unfairness." Under these circumstances, repeated admonitions (found in the trial transcript) to the jury by the trial court that the jury consider the evidence only as to certain individuals was a mere gesture, having no practical or substantive effect. The damage was done. A juror cannot nicely cleave bench admonitions like a sharp scalpel excises a tumor. During the trial, because of the joinder, the trial court was required on several occasions to strike certain evidence against Thomas R. Maves and Kathleen Maves. This cumulatively created an adverse impact upon the jury which would not be existent if the trials were separately conducted. Defendants should have been tried individually in separate trials.[2] Justice, at its zenith, does not flounder for fairness but finds it and makes it a real, living thing. Defendants simply did not get a fair trial as there was an abuse of discretion by the trial court in granting the joinder. Therefore, under the rule announced in *Reiman*, 284 N.W.2d 860, I would reverse and remand for three separate trials. Our criminal justice system and this country cannot survive without basic fairness in criminal trials of our citizens. "A great compelling motivation for the formation of the American Union was a hunger by our forefathers for justice by their peers. This hunger begot, within the Bill of Rights, the right to a speedy public trial by an impar-

tial jury." Henderson, J., dissenting in *State v. Auen*, 342 N.W.2d 236, 241 (S.D. 1984).[3]

## SEQUEL

In the distance, came the sound of men marching and equipment moving, and the quiet, which accompanies terror, became as if time had stood still. Along the highway, a little boy looked up at his grandfather and queried: "Grandpa, where did our freedom go?" Often, he had heard his grandfather talk of freedom. And the grandpa answered: "My good grandson, it was not lost on the battlefields by our men overseas, it was lost in the halls of Congress and in the courts of our land." His lips trembling, his eyes misty, he cried aloud: "Dear God, it was lost in print, my son." Startled by the fervor and anguish in his grandfather's voice, the little boy nestled closer. Steadily, the marching became louder and ominous. Fearing what he did not totally understand, but sensing the woe of his grandfather, he nudged against him and whispered: "Grandpa, let's go home." In the land of the free, where has freedom gone?

2. *See* ABA Standards for Criminal Justice 13–3.2 and 13–3.3 setting forth standards as to when there should be joint trials. Joinder should not be allowed where "severance is appropriate to promote or necessary to achieve a fair determination of one or more Defendant's guilt or innocence for each offense, the Court in so determining should consider among other factors whether, in view of the number of offenses and Defendants charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense and as to each Defendant."

3. For litany of dissents against the erosion of that guaranteed liberty, *see Auen*, 342 N.W.2d at 241; *Brush v. Klauck*, 347 N.W.2d 165 (S.D. 1984). *See also, State v. Braun*, 351 N.W.2d 149, 153 (S.D.1984) (Henderson, J., dissenting), for general principle cited by this author that defendant who exercises his constitutional right to trial by jury to determine his innocence or guilt must not have his sentence adversely affected thereby.